JOSEPH KUCZKO, AN INFANT, BY JOHN M. KUCZKO, HIS NEXT FRIEND, JOHN M. KUCZKO, INDIVIDUALLY, AND JOHN M. KUCZKO AND MARY KUCZKO, AS FATHER AND MOTHER OF JOSEPH KUCZKO, JOINTLY, PLAIN-TIFFS-RESPONDENTS, v. PRUDENTIAL OIL CORPORA-TION, A CORPORATION OF DELAWARE, AND ROBERT BRYDON, DEFENDANTS-APPELLANTS.

Argued October 19, 1932—Decided January 31, 1933.

For the appellants, *Kellogg & Chance.*

For the respondents, *Leonard J. Emmerglick.*

The opinion of the court was delivered by

PARKER, J.   The suit arose out of a collision between an auto truck of the corporate defendant driven by the defendant Brydon, and a bicycle on which the infant plaintiff, Joseph Kuczko, then a boy of ten years old, was riding.   The bicycle was propelled by his cousin, a boy of seventeen named Harpas, who is not a party to this suit, and Joseph was riding in front of Harpas on the upper cross-bar.   The bicycle was on the right of the road, as the jury could find, and the truck and bicycle came together in the act of passing.   It is not argued that there was no evidence of negligence on the part of the

truck driver: the questions raised relate mainly to contribu-
tory negligence.

The grounds of appeal are four in number:

1. Denying a motion to nonsuit.

2. Charging the jury that "of course the boys on this bicycle,
which is classed as a vehicle under our Traffic act, and the
operator of this truck had as much right on the highway one
as the other * * *.

3. Charging the jury in a quoted passage, the substance
of which is that a bicycle is a vehicle within the intendment
of the Traffic act (*Pamph. L.* 1928, *p.* 721), and entitled to
the same rights as other vehicles.

4. Charging the jury as follows:

"We have held in this state that a breach of the Traffic
act is not of itself indication of negligence * * * and
the court has said that while it is true that a breach of the
Traffic act is not of itself evidence of negligence, * * *."

1. The motion to nonsuit was rested on the ground that
because the Traffic act provides at page 726 of *Pamph. L.*
1928, *art.* 3, § 3, that "the rider of any bicycle shall not * * *
carry upon his bicycle any other person" and the infant plain-
tiff was participating in a violation of this clause, he was
wrongfully on the road, and, as now argued, though the trial
court did not wait for the argument to develop, was, as a
court question, contributing to the injury he sustained, and
could not recover therefor. Only one authority, *Betts* v. *Mas-
sachusetts Bond and Insurance Co.,* 90 *N. J. L.* 632, is cited
for this proposition. That case was a suit on an insurance
policy, which specifically provided that the company should
not be liable for a claim arising from violation of law or ordi-
nance. The suit was therefore in contract and not in tort.
The opinion cites *Hetzel* v. *Wasson Piston Ring Co.,* 89 *Id.*
205, where a father, party to the employment of his young
son under statutory age, was not permitted to recover from
the employer his consequential damages for injuries to the son
arising out of the employment. But that case seems to have
no bearing on the rights of the infant plaintiff herein. The
Hetzel case cited is that of the father. At page 201 of the

same volume is the case of Hetzel, Jr., in which it is flatly
held that while his violation of the Child Labor act excluded
him from the contractual benefits of the Workmen's Com-
pensation act, it did not as a matter of law bar recovery for
damages at common law resulting from negligence of the
employer. The question in cases where a violation of a statute
or ordinance is present, is not whether the violation was a
condition under which the accident occurred, but whether it
was in whole or part causative of the accident, and this is
usually for the jury. *Kolankiewiz* v. *Burke,* 91 *N. J. L.*
567; *Winch* v. *Johnson,* 92 *Id.* 219; *Baker* v. *Fogg & Hires
Co.,* 95 *Id.* 230; *Muller* v. *West Jersey and Seashore Rail-
road Co.,* 99 *Id.* 186; *Jackson* v. *Geiger,* 100 *Id.* 330. We
find no error in refusing the nonsuit as to the boy, and as the
motion was expressly inclusive of all the plaintiffs, the denial
of this general motion was not error. We may add by way
of remark as to the parents, that unless they were in some
way parties to the participation by their young son in a breach
of the Traffic act by his cousin, the case of *Hetzel, Sr.,* v.
*Wasson Piston Ring Co., supra,* seems not in point.

2, 3. As to grounds 2 and 3, we find no harmful error. It
is true that the definition of a "vehicle" on page 724 of
*Pamph. L.* 1928, excepts "devices moved by human power
\* \* \*." A bicycle is of course moved by human power.
Whether the legislature regarded it as a "device" is not so
clear. But so considering it, we note, first, that by the very
first section of the act it is provided that "definitions, as used
in this act, shall for the purposes of this act have the mean-
ings respectively ascribed to them in this article except in
those instances where the context clearly indicates a different
meaning." The word "definitions" is unfortunate, but the in-
tent is clear, viz., that any words used in the act and defined
in article 1 shall have the meanings respectively ascribed to
them, &c. Article 3 expressly treats of "bicycles" by that
title, and contains five sections. The first provides for a light
"when in use on any street at night;" the second, for an
audible signal; the third forbids coasting with feet off the
pedals, or riding with hands off the handle bars "in any

street." The fourth forbids operation on the sidewalk, and the fifth forbids hitching on to trolley cars or other vehicles. In short, bicycle riding is regulated by statute with that particularity of detail which is characteristic of so many statutes dealing with the every day affairs of human life. Whether a bicycle be a vehicle within the definition, it is clear that it is entitled to use public highways like other "devices" which are "vehicles," and it would be idle, we think, to say that a bicycle is not controlled by the general regulations concerning vehicles in articles 7 to 10, inclusive, of the act where applicable. Consequently the error, if any, in calling it a vehicle for purposes of the case was technical and not harmful.

4. But we think there was harmful error in charging that a breach of the Traffic act is not of itself evidence of negligence.

The judge correctly charged plaintiffs' sixth request, that "it was not negligence *per se* for the plaintiff (Joseph) to ride in the position that he did on the bicycle as he did, that is to say, that it is not negligent as a matter of law." He went on to expound this by illustrations, and began by saying "we have held in this state that a breach of the Traffic act is not of itself an *indication* of negligence," and concluded as follows: "The court has said that those who use the highroads are presumed to know the law, and they may assume that others who use the highroads know the law. The act also provides, as I read, 'the rider of any bicycle shall not carry on his bicycle any other person.' That act was apparently passed because that was looked upon as something that was dangerous, but under certain circumstances you may find that might happen and not be dangerous at all. The court has said that while it is true that a breach of the Traffic act is not of itself evidence of negligence, nor does it give rise to a presumption of negligence, nevertheless it is a factor to be considered in the case. The jury relies on what the law is and then takes into consideration all the circumstances of the case. I make this explanation of the last section which I have charged for the plaintiff."

If it was error to say that "a breach of the Traffic act is

not of itself evidence of negligence" that error, on well settled principles is not cured by other and inconsistent instructions unless the erroneous instruction is definitely withdrawn. *State* v. *Parks,* 96 *N. J. L.* 360; *Collins* v. *Central Railroad Co.,* 90 *Id.* 593. We think the instruction was erroneous: for it permitted if not indeed required, the jury to find that negligence (in this case contributory negligence) could not be predicated on a mere violation of the Traffic act, without more, even though that violation may have been a contributing cause of the accident. We have just seen that a plaintiff should not be nonsuited because such a violation was one of the conditions under which the accident occurred, unless it was conclusively shown to be a causative condition. On the other hand, that such violation is evidence from which a jury may infer negligence was held in *Evers* v. *Davis,* 86 *Id.* 196. The rule was reiterated by Mr. Justice Swayze in *Kolankiewiz* v. *Burke,* 91 *Id.* 567, 571, already cited. Several of the cases, as for example *Chaipparine* v. *Public Service Railway Co., Ibid.* 581, speak of it as "a circumstance to be considered" in deciding whether or not there was negligence, "but not controlling," *i. e.,* not requiring the court to take the case from the jury. As recently as the last term of this court (*Reeves* v. *Prosser,* 109 *Id.* 485) we treated the driving of an automobile on the wrong side of the road as evidence of negligence sufficient to pass a nonsuit and direction where it appeared that there was evidence that such driving was causative of the accident. The causation must of course appear in any case. For one hundred years our courts in railroad crossing cases have treated failure to give the statutory crossing signals, without more, as evidence of negligence, and juries have been told that if they found neither signal was given it simply remained to ascertain whether the accident was due to the omission. We know of no reported case in which that rule has been questioned. What cases we have are to the effect that if the signal required has been given, the railroad has done its full duty, in the absence of dangerous conditions for which it is responsible. *New York, &c., Railroad Co.* v. *Leaman,* 54 *Id.* 202; *Hackett* v. *Railroad Co.,* 58 *Id.* 4. A crossing

sign not as required by the statute has been held evidential of negligence where causative of the accident. *Lyman* v. *Pennsylvania Railroad Co.,* 109 *Id.* 400. It is true that by the Railroad act cited in that case there was a proviso that the liability to a *qui tam* action for a penalty would not take away any right that a party might have to recover damages for an injury due to failure to comply with the act: that, however, created no cause of action, but merely reserved any right existing at common law.

In the case at bar, the effect of the instructions was to permit the jury to disregard altogether the participation of the infant plaintiff in a violation of the Traffic act as a circumstance, evidential of contributory negligence. It was open to the jury to say that it was a concurrent cause of the accident. The plaintiff was very young, but of an age at which the jury might properly hold him accountable for care for his own safety. *Sheets* v. *Connolly Street Railway Co.,* 54 *N. J. L.* 518; *Anderson* v. *Central Railroad Co.,* 68 *Id.* 269; *Brady* v. *Consolidated Traction Co.,* 64 *Id.* 373. Whether the boy knew or not that double riding was forbidden by law, the statute was enacted for boys as much as men, perhaps more so, and from the necessity of things, ignorance is no excuse.

This error requires a reversal of the judgment to the end that a *venire de novo* be awarded. As there must be a new trial, we have thought it better to deal with all the points raised although only the last is determinative of the appeal in favor of reversal.

*For affirmance*—None.

*For reversal*—The Chancellor, Trenchard, Parker, Lloyd, Case, Bodine, Donges, Brogan, Kays, Hetfield, Wells, Kerney, JJ. 12.